UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUDY LYNN SMITH-DANDRIDGE
as Administratrix of the Estate of Andrew
Dawson Bell, Deceased                                                                         PLAINTIFF

v.                                       No. 5:19-CV-05184

OFFICER JARRETT GEANOLOUS, et al                                                  DEFENDANTS

## OPINION AND ORDER

Before the Court are two motions for summary judgment. Separate Defendants Jarrett Geanolous, M. Kurtis Sutley, and Brandon Jones ("Fayetteville Defendants") filed a motion (Doc. 99) for summary judgment, brief in support (Doc. 100), and statement of facts (Doc. 101). Separate Defendants M. Arnold, Jeremy Riley, Joseph Standrod, Ado Weir, Calvin Mitchell, J. Sorrell, Dustin Carter, Chad Morgan, Joseph Jennings, Mitchell Smothers, Charles Dominguez, Leigh Brewer, and Ado Sanchez ("Washington County Defendants") also filed a motion (Doc. 104) for summary judgment, brief in support (Doc. 105), and statement of facts (Doc. 106). Plaintiff Judy Lynn Smith-Dandridge filed a response (Doc. 130) in opposition, brief (Doc. 133), and statement of facts (Doc. 134) to Fayetteville Defendants' motion. Fayetteville Defendants filed a reply (Doc. 147). Plaintiff also filed a response (Doc. 135) in opposition, brief (Doc. 143), and statement of facts (Doc. 144) to Washington County Defendants' motion. Washington County Defendants filed a reply[1] (Doc. 148). For the reasons set forth below, the motions will be GRANTED.

---

[1] The Court considered Washington County Defendants' twelve-page reply in its entirety even though the reply exceeded the seven-page limit set in the Court's initial scheduling order (Doc. 16).

1

I.  **Background**

Plaintiff is the administratrix of the estate of her son, Andrew Dawson Bell.  On September 24, 2016, Bell called Plaintiff and told her someone was trying to break into his apartment in Fayetteville, Arkansas.  Plaintiff told Bell to call the police.  Defendant Kurtis Sutley with the Fayetteville Police Department was dispatched to Bell's apartment building after a caller reported a burglary.  Sutley checked the apartment complex and interviewed individuals who were in the parking lot, but no one noticed any burglary or suspicious activity.  Sutley was dispatched a second time to Bell's apartment complex after a caller reported an attempted break in at Apartment 185.  The caller stated people were on the balcony and that he had armed himself with knives.  Defendant Brandon Jones was dispatched along with Sutley and arrived at Apartment 185, which was later determined to be Bell's apartment.  Bell came out of his apartment to talk with Sutley and reported people had crawled on his balcony and someone climbed a tree next to his window in an attempt to break into his apartment.[2]  The officers investigated and determined the tree was incapable of supporting a person's weight and although a few pieces of glass were on the balcony, nothing indicated vandalism or burglary.  After Sutley and Jones investigated, Bell told them he was going to sleep and the officers left the apartment complex.

Sutley and Jones were dispatched for a third time to Bell's apartment complex after receiving reports of an intoxicated and armed person in the parking lot.  Upon arrival, Jones saw Bell outside carrying two large knives and a flashlight.  Jones ordered Bell to drop the knives and

---

[2] Plaintiff executed a declaration stating the inside of Bell's apartment contained wall drawings of "skulls, stick-figures, and persons being stabbed" and a burn mark on the kitchen floor. (Doc. 130-27, pp. 1-2).  Plaintiff alleges Sutley and Jones entered the apartment and argues that this demonstrates Sutley and Jones had knowledge of the drawings and burn marks.  However, no evidence supports Plaintiff's claims that Sutley and Jones knew of the drawings and marks.  Regardless, Sutley and Jones's knowledge of Bell's wall art does not affect this analysis.

flashlight and get on the ground. Bell complied and was handcuffed once Sutley arrived on the scene. Defendant Jarrett Geanolous was also dispatched to the apartment complex to talk to victims and witnesses. Bell was arrested on suspicion of violations of the statutes against terroristic threatening, carrying a weapon, and being drunk, insane, and disorderly. Eventually he was put in Sutley's patrol car and transported to Washington County Detention Center ("WCDC").

During transport, Sutley questioned Bell about his name, address, phone number, and other identifying information. Bell was able to coherently answer Sutley and the only medical issue Bell reported was that he had a broken hand. Bell requested to be taken to the hospital for his broken hand but Sutley did not take Bell to the hospital. Instead, Sutley took Bell to WCDC and informed WCDC intake officers of Bell's reported broken hand.

The WCDC intake process required the WCDC staff to complete multiple questionnaires, including a medical questionnaire with Bell. Bell informed intake officers that he was taking several medications, had a history of mental illness, and had made past suicide attempts. However, when asked if he had any intentions to harm himself or commit suicide, Bell responded no. After the intake process, Bell was housed in WCDC's M-Block in A-Pod. Bell made several phone calls while in M-Block, many to Plaintiff, but made no mention of any intention to commit suicide. The general subject of the phone calls was a discussion of the events leading to Bell's arrest and his potential bail. At 3:17 p.m., Bell used the intercom system to report a panic attack. Defendant Joseph Jennings visited Bell and reported to paramedic Hill that Bell was "panicky." Hill decided not to visit Bell, but to wait to see how his condition progressed. At 3:56 p.m. Bell used the intercom again and asked if a nurse was coming to check on him. Defendant Dustin Carter incorrectly told Bell that a nurse was on her way. Between the two panic attack reports, Bell could be seen on surveillance video continuously walking around M-Block, sitting on the floor, and

placing his head in his hands. Almost immediately after talking to Carter, Bell walked back to his cell, prepared a bedsheet, and hanged himself. Bell was only partially visible on surveillance video when he hanged himself, and Washington County Defendants did not arrive in his cell until approximately ten minutes after Bell hanged himself.

Plaintiff brought suit against the Fayetteville Defendants and Washington County Defendants under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. On July 24, 2020, the Court dismissed Plaintiff's state law claims against Washington County Defendants. Defendants' current motions argue summary judgment is proper on Plaintiff's federal claims and remaining state law claims because both Fayetteville Defendants and Washington County Defendants are entitled to qualified immunity.[3]

As an initial matter, Plaintiff's federal claims against Defendants Standrod, Sanchez, Weir, Mitchell, and Sorrell will be dismissed with prejudice because Plaintiff concedes in her brief that there is no evidence these defendants violated Bell's constitutional rights.

## II.   Legal Standard

On a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party and grants all reasonable factual inferences in the nonmovant's favor, and only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P.

---

[3] Washington County Defendants also argue Plaintiff does not have standing because the state probate court issued an order finding "the only known asset of the Estate is a possible tort claim" and Plaintiff has not alleged any tort. However, the Supreme Court has "confirmed in countless cases that a § 1983 cause of action sounds in tort . . . [and] stated repeatedly that § 1983 'creates a species of tort liability.'" *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999) (Scalia, J., concurring in part) (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). The Court finds Plaintiff does have standing and rejects the Washington County Defendants' standing argument as without merit.

56(a); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). The nonmovant may not rely only on allegations in the pleadings, but must identify specific and supported facts that will raise a genuine and material issue for trial. *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997)). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

### III.   Analysis

#### A.   Qualified Immunity

"At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2019) (citing *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). The Eighth Circuit recognizes a clearly-established Fourteenth Amendment due process right of pretrial detainees "to be free from deliberately indifferent denials of emergency medical care." *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016). Analysis of these claims borrows from Eighth Amendment case law. *Id*. The Eighth Amendment prohibits officials from acting with deliberate indifference towards an inmate's substantial suicide risk and serious medical needs, and the Fourteenth

5

Amendment extends this prohibition to pretrial detainees. *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003).

To prevail on a deliberate indifference claim, a plaintiff must demonstrate an objectively serious medical need and "that the defendant actually knew of, but deliberately disregarded." *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013). A substantial risk of suicide is an objectively serious medical need. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). A defendant "is not liable under the Fourteenth Amendment unless the official knows of facts evidencing a substantial suicide risk *and the* official actually infers the prisoner presents a substantial suicide risk." *Coleman*, 349 F.3d at 538 (citing *Farmer v. Brennen*, 511 U.S. 825, 837 (1994) (emphasis in original)). "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Id.* at 746-47 (citing *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "The deliberate indifference standard is met only if there were a strong likelihood, rather than a mere possibility, that self-infliction of harm would result." *Rudd v. City of Jonesboro*, Case No. 3:13-cv-00173, 2016 WL 8715580, at *4 (E.D. Ark. Sept. 9, 2016) (quoting *Lambert v. City of Dumas*, 187 F.3d 931, 937 (8th Cir. 1999)) (internal quotations omitted). "A showing that a jailer was negligent in failing to recognize a prisoner's suicidal tendencies is insufficient to satisfy this standard." *Lambert*, 187 F.3d at 937.

      i.    **Fayetteville Defendants**

Fayetteville Defendants argue they are entitled to qualified immunity because there is no evidence that they knew Bell was at substantial risk of committing suicide. Plaintiff argues the Fayetteville Defendants knew Bell was suffering from a serious medical need and were deliberately indifferent to this need by taking Bell to the WCDC instead of the hospital. Viewing

the facts in a light most favorable to Plaintiff, the Court disagrees. Sutley and Jones had the most interaction with Bell on the night of September 24, and during their interactions, Bell never threatened suicide, nor made any attempt to take his life. Sutley and Jones's first interaction with Bell was after his second 911 call, when the officers went to Bell's apartment. Bell was "sweating profusely and appeared excited and stated that people had been crawling on his balcony breaking things and that someone had climbed a tree next to his bedroom window and was trying to break in." (Doc. 101, p. 3). However, Bell eventually told Sutley and Jones that he was going to go back into his apartment to watch a movie and sleep. Plaintiff argues a question of fact exists if the officers went into Bell's apartment, because if they had gone into Bell's apartment they would have discovered drawings of skulls, stick-figures, and persons being stabbed, as well as a burn mark, and this could demonstrate to Fayetteville Defendants that Bell suffered from mental illness. Even accepting this fact as true, not every mental illness results in suicide risk, and the mere presence of unconventional artwork and a burn mark in an apartment in a university town is insufficient to support a finding that Fayetteville Defendants were aware of Bell's risk of suicide.

Further, Bell complied with all of Jones's instructions during his arrest and was lucid, responded to questions, and inquired about the charges against him, his potential bail amount, and other relevant information after he was placed in Sutley's vehicle. The only medical need Plaintiff addressed with Fayetteville Defendant was a potential broken hand, which Sutley reported to WCDC. No reasonable jury could find that Fayetteville Defendants had actual knowledge that Bell presented a substantial suicide risk or any other serious medical need.[4] Accordingly, Fayetteville Defendants are entitled to qualified immunity.

---

[4] The facts in this case are similar to those in *Grayson v. Ross*, 454 F.3d 802 (8th Cir. 2006) where the Eighth Circuit found an arresting officer was entitled to qualified immunity. In *Grayson*, the plaintiff could not demonstrate the arresting officer had knowledge of plaintiff's hallucinations.

### ii. Washington County Defendants

Washington County Defendants argue they are also entitled to qualified immunity because Plaintiff cannot show they knew Bell had a substantial risk of suicide. Plaintiff argues Washington County Defendants are not entitled to qualified immunity because Washington County Defendants knew Bell had a substantial risk of suicide and acted with deliberate indifference.

Despite Plaintiff's argument to the contrary, no reasonable jury could find the Washington County Defendants knew Bell presented a substantial suicide risk. Bell told intake officers that he had been diagnosed with bipolar disorder, anxiety, depression, and suicidal ideations in the past, and had attempted suicide in the past. However, Bell told the intake officers that he had no present intention to harm himself or commit suicide. These two statements together are not enough to show that Washington County Defendants knew Bell had a *substantial or excessive* risk of suicide at the time of intake.[5] Further, although Bell informed officers he took a variety of medications—including Lithium, Chlonazepam, Remeron, Seroquel, and Adderall—Plaintiff has failed to demonstrate how this would make Washington County Defendants aware of a substantial risk of suicide.

Plaintiff also argues that Bell's behavior after intake is sufficient to demonstrate Washington County Defendants had knowledge of Bell's substantial risk of suicide. Plaintiff

---

*Grayson*, 454 F.3d at 809. During his arrest the plaintiff "acted irrationally, informing the officer that his vehicle was going to explode, and became combative, which required the officer to subdue him with a service weapon." *Thompson*, 730 F.3d at 747 (citing *Grayson*, 454 F.3d at 806)). However, "once arrested, the [plaintiff] sat calmy in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail." *Id.* (citing *Grayson*, 454 F.3d at 809). The Eighth Circuit found the plaintiff's behavior was insufficient to establish the arresting officer had subjective knowledge of the plaintiff's serious medical need. *Grayson*, 454 F.3d at 809.

[5] The risk of suicide, while not required to be imminent, must be substantial or excessive. *Nadeau v. Shipman*, 471 F. Supp. 3d 952, 970-71 (D. N.D. 2020).

points to Bell's phone calls, arguing the calls demonstrate Bell "was continuing to misperceive reality during the 14 hours before his hanging." (Doc. 135, p. 14). But in none of the phone calls did Bell state he was hallucinating, suicidal, or had any intention of harming himself. Plaintiff argues it was clear Bell was "misperceiv[ing] reality" and hallucinating because he was describing the attempted burglary, but it would not be obvious to a layperson that this was a hallucination—especially to a layperson who was not at the apartment earlier in the evening.[6] Plaintiff further argues that Bell's two reports of a panic attack indicate knowledge of a substantial risk of suicide, but knowledge of a panic attack does not make lay defendants knowledgeable of a suicide risk. Viewing all of Bell's actions from the time of intake until his suicide in a light most favorable to Plaintiff, no reasonable jury could conclude Washington County Defendants knew Bell posed a substantial risk of suicide or serious harm.[7] Washington County Defendants are entitled to qualified immunity.

---

[6] In any case, the Court cannot find that when a pretrial detainee recalls facts differently than an arresting officer, detention facility staff are on notice that the pretrial detainee is mentally ill and poses a substantial risk of suicide.

[7] *See Tanner v. City of Sullivan*, No. 4:11-CV-1361, 2013 WL 121536, at *5-6 (E.D. Mo. Jan. 9, 2013) (finding risk detainee would commit suicide not obvious when officers knew detainee was on medication but detainee never expressed any suicidal tendencies); *Roy v. Lake County S.D.*, No. CIV 12-4070-KES, 2014 WL 3386022, at *4-5 (D. S.D. July 9, 2014) (ruling defendant not aware detainee posed substantial suicide risk when detainee exhibited bizarre behavior, reported taking anxiety medication, denied marks on wrists were previous suicide attempt, and denied present thoughts of suicide). *Cf. Naudeau v. Shipman*, 471 F. Supp. 3d 952 (D. N.D. 2020) (finding genuine issue of material fact over defendant's knowledge of whether pretrial detainee presented substantial risk of suicide when detainee came into facility with self-inflicted neck wound, detainee requested psych ward, detainee reported he was suicidal on a phone call, and requested mental health help for a month); *Coleman*, 349 F.3d at 539 (finding defendants knew pretrial detainee presented a substantial suicide risk when "interviewees told [defendant] that [detainee] was a suicide risk, had recently threatened to suicide, and would kill himself if jailed").

9

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' motions (Docs. 99 and 104) for summary judgment are GRANTED and Plaintiff's 42 U.S.C. § 1983 claims against all Defendants are DISMISSED WITH PREJUDICE. All remaining state law claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3). Judgment will be entered separately.

IT IS FURTHER ORDERED that the remaining motions (Docs. 107, 109, 111, and 113) are TERMINATED AS MOOT.

IT IS SO ORDERED this 4th day of June, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE